O. J. MᴄMᴀɴᴜs, v. Cʜɪᴄᴀɢᴏ Gʀᴇᴀᴛ Wᴇsᴛᴇʀɴ Rᴀɪʟᴡᴀʏ Cᴏᴍᴘᴀɴʏ, Appellant.

**Railroads:** TRANSPORTATION OF LIVE STOCK: CONTRACT BY STATION AGENT. There is no legal presumption that the local agent of a railway company at one station has authority to make a contract for a shipment from another station: and in the absence of proof of such authority by the party asserting the contract, evidence of the agreement is inadmissible.

**Same:** CONNECTING LINES: LIMITATION OF LIABILITY: BURDEN OF PROOF. A railway company may limit its liability for the transportation of property to the terminus of its own lines; and where there is no proof of an agreement for through shipment, but a written contract so limiting its liability, it is not chargeable with damages on a connecting line; and the burden is not cast upon the company to show freedom from liability.

**Same.** A railway company is not charged with the burden of showing freedom from liability for injury to property while in transit, where the shipper is furnished free transportation for the purpose of accompanying the shipment, and he in fact accompanies the shipment.

**Injury to stock in transit:** LIABILITY OF COMPANY. The mere fact that one of a car load of cattle was down while in transit. with no evidence that the railway company was in any manner responsible for its condition, is not sufficient evidence of its liability for an injury of the animal to warrant a submission of the issue to the jury.

**Freight:** OVERCHARGE: RECOVERY. There can be no recovery of alleged overcharges for freight at its destination, where the charge was based on car capacity, in the absence of a showing of the weight of the shipment.

*Appeal from Superior Court of Counsel Bluffs.*— Hon. G. H. Scott, Judge.

### Thursday, April, 9, 1908.

Suit to recover damage to live stock shipped over defendant's road. There was a trial to a jury and a verdict and judgment for the plaintiff. The defendant appeals.— *Reversed.*

*A. J. Briggs* and *Saunders & Stewart,* for appellant.

*Clem F. Kimball,* for appellee.

Sherwin, J.— The plaintiff is the assignee of L. L., E. G., and E. T. Baker, and as such sues to recover for damages to live stock shipped by said Bakers from McClelland, Iowa, to High River, Alberta, Canada. He also sues to recover an alleged overcharge of freight on said shipment which was paid to the agent of the Canadian Pacific at High River. The plaintiff alleged that he, as agent for the Bakers, entered into an oral agreement with the defendant through its agent at Counsel Bluffs, one Shipley, for the transportation of three cars of emigrant outfit and stock between the points stated, and that by the terms of said agreement the freight charge thereon was to be twenty cents per hundredweight from McClelland to Minnesota Transfer, the northern terminus of the defendant's road, and that from Minnesota Transfer to High River, Alberta, the rate agreed upon was $45 per car. It was further alleged, and the evidence supported the allegation, that the charge over the defendant's road was based on a minimum car capacity of twenty thousand pounds, and that the rate from Minnesota Transfer to High River was based on a maximum car capacity of twenty-four thousand pounds. The defendant pleaded a written contract entered into by the assignors of

the plaintiff, whereby the defendant undertook to transport the property from McClelland to Minnesota Transfer, and wherein its liability was limited to its own line.

The trial court, over the objection of the defendant, permitted the plaintiff to show that he had had a conversation with the agent Shipley in Council Bluffs, Iowa, wherein the rates were discussed, and the amounts stated herein were by the agent said to be the rate for which the property would be shipped to its destination. There was error in receiving such testimony. There is no pretense in argument, nor is there anything in the record tending to show that Shipley had any authority to enter into a contract for the company in reference to a shipment from a station other than Council Bluffs. The appellee does contend that a shipment of one car was made to High River some six or eight months before the shipment in question, and that he made the contract with Shipley for such shipment, and entered into an agreement with him for the freight charge therefor and for other details of the trip. It appeared, also, that the car went through according to the contract with Shipley and for the charge agreed upon. The plaintiff now claims that the facts relating to the first shipment were sufficient to warrant the finding that Shipley had authority to make a contract for the company for a shipment from McClelland, and also authority to contract for the company for a shipment beyond the terminus of the company's line. So far as the latter question is concerned, it may be conceded that such a transaction would give some warrant for the finding that he had authority to contract for a shipment beyond the terminus of the defendant's road; but it does not furnish any foundation for the claim that he had authority to make a contract for a shipment from another station, because there is nothing in the record tending to show that the first shipment was made from McClelland or any station other than Council Bluffs. The law raises no presump-

1. Railroads: transportation of live stock: contract by station agent.

tion that the local agent of a railroad company at one station has any authority to enter into a contract for a shipment from another station, and, where it is claimed that such authority existed, the burden of proof is upon the plaintiff to affirmatively show the authority claimed. *Voorhees v. Chicago, R. I. & P. Ry. Co.,* 71 Iowa, 735; *Burgher v. Railway Co.,* 105 Iowa, 335.

The testimony relating to the oral agreement plead having been improperly received for the reason stated, there was nothing upon which a verdict for the plaintiff could be

2. SAME: connecting lines: limitation of liability: burden of proof.

based growing out of such alleged oral contract; and, it being unquestioned that the Bakers did, in fact, enter into written contracts for the transportation of such cars with the defendant's agent at McClelland, it must necessarily follow that the appellant was not chargeable with any damages to the stock or property of the Bakers which was caused after the property had been delivered to the shippers at the Minnesota Transfer. The trial court instructed the jury that the plaintiff could only recover for damages arising while the property was in the defendant's possession, but, in the same connection, the jury was told that the burden of proof was upon the defendant to show that it was not liable therefor. The instruction was undoubtedly based upon chapter 74, Acts 30th General Assembly, 1904, which provided, in substance, that, where a railway company made a contract to carry property to a point beyond the terminus of its own railway and provided therein that there should be no liability for damage to such property beyond its own terminus, it should be held for such damage unless it prove that it was not liable therefor. While the instruction might have been pertinent had the oral contract governed, it clearly was not the rule by which the jury was to be guided, and it was prejudicial error to give the same. It is a well-settled rule that a carrier may ordinarily limit its liability for the transpor-

tation of property to the terminus of its own line.  *Hartley v. Railway Co.,* 115 Iowa, 612.

There is also another reason why the instruction was erroneous.  The shippers were furnished free transportation by the defendant company for the purpose of enabling them to accompany their shipments, and where the shipper does, in fact, accompany the stock, the burden of showing freedom from liability is not cast upon the defendant.  *Grieve v. I. C. Ry. Co.,* 104 Iowa, 659; Elliott on Railroads, section 1549, and cases cited.

3. SAME.

The plaintiff claimed over $400 damage to his stock, and the verdict returned by the jury shows that the greater part of such claim was allowed.  The plaintiff's own testimony conclusively showed that practically all of the damage was done after the stock left the defendant's road, and that the defendant was in no manner liable therefor.  The question of the defendant's liability for damage to stock, except one item of the claim to which we shall presently refer, should not have been submitted to the jury under the record in this case. The testimony showed that one heifer of the value of $35 was down when the defendant's train reached the stockyard at Minnesota Transfer.  It was also shown that there was a delay of some ten or twelve hours on the road from McClelland to that point, and that it was caused by an obstructed track near Bristow, Iowa, but the record is absolutely without evidence tending to show that the railroad company was the cause of the heifer's condition at the time in question, and one of the shippers himself testified that it was very common for stock to get down in the car during a shipment.  There is nothing in the record indicating that the heifer was thrown down by improper management of the train or the car, or that her condition was in any way caused by the defendant.  For this reason, we think it was error to submit that item of the claim to the jury.

4. INJURY TO STOCK IN TRANSIT: liability of company.

When the cars in question reached High River and before they were unloaded, the plaintiff's assignors were required to pay something like $250 more than the amount claimed to have been agreed upon with Shipley, and this amount the plaintiff sought to recover in this action, and he was awarded some part of the amount at least. Just how much it is impossible to tell from the verdict because it was for a lump sum. But, however this may be, there was no justification in the evidence for the recovery of any sum. Even if it be conceded that the plaintiff was entitled to recover under the oral contract alleged, there is absolutely nothing in the record tending to show the weight of the loads in any of the cars, and no jury could say, nor can we say from the record, that the charge may not have been entirely correct based upon the load each car in fact carried. If the cars contained more than twenty thousand pounds, they would be liable to an additional charge from McClelland to Minnesota Transfer, and, if they carried more than twenty-four thousand pounds from Minnesota Transfer to High River, they would be subject to a still different rate, so that, to enable a jury or a court to find that there had in fact been an overcharge, it would be necessary to prove the load each car carried. This was not done, and there is nothing in the record from which it can be determined.

5. **Freight: over charge: recovery.**

Other errors are assigned and argued, but the same questions are not likely to again arise if there should be a retrial of the case, and we need give them no further consideration.

For the errors pointed out, the judgment must be, and it is, *reversed.*