H. S. TURKINGTON et al., Appellees, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**TRIAL:** Instructions—Assumption of Issuable Fact. An instruction
1   must not assume that a certain fact exists when such fact is material and in issue.

**PRINCIPAL AND AGENT:** The Relation—Declaration of Agent.
2   Agency may not be established by the declarations of the alleged agent.

*Appeal from Louisa District Court.*—OSCAR HALE, Judge.

JUNE 22, 1923.

ACTION at law to recover damages sustained as alleged by plaintiffs by a delayed shipment of cattle on the line of the defendant railway from Letts, Iowa to the National Stockyards, East St. Louis, Illinois. Trial to a jury resulting in verdict for plaintiffs in the sum of $519. From the judgment entered defendant appeals.—*Reversed*.

*H. O. Weaver, J. G. Gamble,* and *A. B. Howland,* for appellant.

*Molsberry & Reaney,* for appellees.

De Graff, J.—The issues involved in this case concern damages by reason of an alleged unreasonable delay in the transportation of four carloads of cattle to point of destination. Plaintiffs allege in the petition, as amended, that the shipment of cattle should have reached the terminal point on April 5, 1920 but did not arrive there until 11:30 A. M. April 6, 1920 and that by reason thereof damage resulted in the following items: 33 pounds per head extra shrinkage on account of delay in delivery of 101 cattle; 25 cents per hundredweight decline on sale of cattle in late market, and extra feed upon reloading at Peoria. A recovery is prayed in the aggregate sum of $647.29.

Defendant answering admitted the shipment of the cattle on April 4, 1920 and pleaded that the provisions of the live stock contract did not require the railway company to transport live stock by any particular train, or in time for any particular market, or otherwise than with reasonable dispatch. It was further alleged that said shipment received the usual scheduled handling and was not delayed.

Upon the conclusion of the evidence the court withdrew from the consideration of the jury the issue as to the failure of the defendant to deliver the animals at destination on April 5, 1920, but submitted the case on the question of decline in market on April 6 by reason of late arrival, and the extra shrinkage occasioned thereby.

The evidence discloses that the cattle were loaded at Letts on Sunday afternoon April 4 about 1:30 P. M. The cars were moved about 2 P. M. The cattle weighed 95,565 pounds and arrived at Peoria April 5 at 6:15 A. M., and after the stock was fed and watered were reloaded and delivered to the Chicago, Peoria, and St. Louis Railroad Company leaving Peoria at 8:05 P. M., arriving at East St. Louis 9:45 A. M. April 6, and were placed in the stockyards according to appellant's contention at 10:25 A. M.

The distance traveled is about 335 miles. It is the contention of appellee that the cattle arrived at their destination on Tuesday April 6 at 1 P. M. The evidence discloses that the usual and ordinary time for handling and transportation is 18 hours. At the yards the cattle weighed 89,680 pounds representing an average shrinkage of 58 pounds per head. The average

shrinkage of cattle for the usual run of 18 hours from Letts to East St. Louis is from 20 to 30 pounds per head. From this evidence the jury by mathematical computation could determine the shrinkage as a basis of recovery.

There was introduced upon the trial a copy of the National Live Stock Reporter, the official trade journal at the East St. Louis market, and it is shown by this exhibit that the later market on April 6 was from 10 to 15 cents lower than the early market of that day.

No evidence is offered disclosing the time of the opening or the closing of the market, nor is it disclosed that the cattle were or were not delivered in time for the opening of the market. There is a dispute in the evidence as to the time of delivery at the market.

The evidence presents a jury question. The primary propositions relied upon by appellant for a reversal are: (1) The trial court gave an instruction which assumed the existence of facts not in evidence (2) The trial court erred in the admission of testimony over objection relative to statements of an alleged agent of the defendant company whose agency was established by his own declarations and which agent was not stationed at the initial point of delivery and shipment.

I.   The trial court in one instruction submitted to the jury the question of damages, if any, sustained by the plaintiffs by reason of the failure of the cattle "to arrive with reasonable dispatch, and in time for the opening of the market on Tuesday, April 6."

It was properly left to the jury to determine the reasonable time "at which they should have arrived."

The jury was then told: "If you find from the evidence and under all the circumstances before us that the cattle should have arrived at the market prior to the opening of such market, the plaintiffs can recover such damages as may have been caused them by the failure to reach the market on that day by reason of the difference in value, if any, between the market price on the market on the 6th and the price at which they were sold on their arrival, and after the close of such market."

The time of arrival at the stockyards at East St. Louis is a fact question and the evidence is in dispute. It is undisputed

that the cattle were sold on the market of April 6th. The time of the opening or the closing of the market on that day is not disclosed.

It is apparent that the instruction as given assumed that the shipment in question did not arrive until after the market of April 6. This was a fact in issue and quite material on the 1. TRIAL: instruc-·· item of damage as pleaded. An instruction may · tions: assump-  not be based upon an assumption. This is ele-
tion of issuable
fact.      mentary. See *Roach v. Parcell,* 61 Iowa 98; *Case & Co. v. Burrows,* 52 Iowa 146.

In another instruction the jury was correctly told that if it was found that the plaintiffs were entitled to recover "you will allow them the difference, if any, between the reasonable market value of their cattle at the National Stockyards at the time that you find from the evidence under the instructions that delivery should have been made and the reasonable market value at the time when you find that the said cattle were actually delivered at said yards."

If the statement with reference to a late delivery and sale is the equivalent to the statement relative to the opening and closing of the market then the error is without prejudice. We do not deem them synonymous terms. There is a conflict in the thought expressed. The first instruction assumes that there was a failure "to reach the market on that day."

II. The second point has to do with a conversation with an alleged freight agent at Peoria concerning which plaintiff Turkington was permitted to testify over objection. The agency 2. PRINCIPAL AND was established by the declaration of the agent.
AGENT: the rela- · This conversation in substance was that the
tion: declaration
of agent.      freight agent told him the reason that the shipment was routed by way of Peoria instead of by way of Burlington was that the Rock Island had more miles of track between Letts and Peoria than between Letts and Burlington.

It is clear that the competency of the alleged statement must be predicated on the agency of him who made it, and that agency under this record is based wholly on the declaration of the alleged agent. Evidence of statement or declaration by an alleged agent are incompetent to prove the fact of agency. *Pierce v. Liberty Oil Co.* 191 Iowa 1013.

Unless the proof of agency is competent no statement or declaration by the alleged agent is binding upon the defendant. Furthermore an agent of a railway company has no authority to bind the company by any contract or statement except as to matters at his own station. Presumptively an agent at Peoria had nothing to do with the shipment in question, and the existence of authority is not established by the record. *McManus v. Chicago G. W. R. Co.* 138 Iowa 150; *Burgher v. Chicago, R. I. & P. R. Co.* 105 Iowa 335.

In *Wishard v. McNeill,* 85 Iowa 474, no prejudice resulted to the defendant in permitting a witness to testify that he asked for the manager of the coal company and the reply from the landlord of the hotel from whom inquiry was made that the manager was stopping at the house. "It did not tend to prove that Hill was manager for McNeill."

In *White v. Elgin Creamery Co.* 108 Iowa 522 it was held that a declaration of a person that he was the defendant's agent was admissible to show in what capacity he acted at the time a certain offer was made which was subsequently ratified by the principal. The decision is in no sense controlling under the facts in the instant case.

True the plaintiff was under no legal obligation to show what caused the delay in the shipment of the cattle, and for this reason the appellee urges that the error is without prejudice. In view of the issues which were submitted to the jury for determination and the instructions given we cannot accept this view. The trial court submitted the issue of negligence on the part of the defendant in making this shipment by way of Peoria and instructed the jury that it was the duty of the defendant to "transport over that line which by its traffic connections and its customary schedule of trains would insure delivery of the cattle within the shortest reasonable time."

There was no evidence that the shipment could have been completed by way of Burlington, taking train connections into consideration, more quickly than by way of Peoria.

For the reasons indicated the judgment entered is—*Reversed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.